**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JAMSHID SAFI** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  4:26-CV-00110-O** |
| | § | |
| **DAREN MARGOLIN, as Warden of** | § | |
| **Prairieland Detention Center** | § | |
| | § | |
| **Respondent.** | § | |

**ORDER**

Before the Court are Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1); Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 10); Respondent's (the "Government") Response (ECF No. 12); and Petitioner's Reply (ECF No. 14). After considering the briefing and relevant case law, the Court determines that Petitioner's Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order and Preliminary Injunction are both **DENIED**.

**I.     BACKGROUND**[1]

Petitioner, Jamshid Safi, is a native and citizen of Afghanistan who illegally entered the United States in September 2023. He applied for asylum in February 2024, and in February 2025, an immigration judge denied his asylum application and ordered him to be removed to Afghanistan. Petitioner timely appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"), which ultimately dismissed his appeal on December 5, 2025.[2] While Petitioner's appeal with the BIA was pending, he was taken into custody by Immigration

---

[1] The undisputed facts are taken from Petitioner's Brief in Support of Petition (ECF No.1-1).

[2] Resp. 2, ECF No. 12.

and Customs Enforcement in late August 2025 after his parole expired on September 25, 2024.[3] After the BIA denied his appeal, Petitioner then sought and was granted a stay of removal by the Fifth Circuit on December 24, 2025. His removal order appeal remains pending with the Fifth Circuit.

On February 2, 2026, Petitioner filed a Petition for Writ of Habeas Corpus asserting that he is being held in violation of (1) 8 C.F.R. § 241.4(l), (2) his Fifth Amendment right to due process, and (3) Supreme Court precedent. The next day, the Court entered an order directing the Clerk of Court to notify the Government and setting deadlines for the Parties' briefing.[4] On February 16, 2026, Petitioner filed his Motion for Temporary Restraining Order and Preliminary Injunction which incorporated by reference his Habeas Petition and essentially asked for an expedited determination of his habeas claims. The following day, the Court ordered expedited briefing regarding the TRO Motion.[5] The Government then timely responded to both the Habeas Petition and the TRO Motion. Petitioner likewise filed a reply. The Habeas Petition and the TRO Motion are now both ripe for the Court's review.

## II.    LEGAL STANDARD

### A.  Habeas Corpus

A person held "in custody in violation of the Constitution or laws or treaties of the United States" can seek relief under a writ of habeas corpus. 28 U.S.C. § 2241(c)(3). "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  Habeas exists only "to grant relief

---

[3] *See* Resp. 2, ECF No. 12; Pet.'s App. Supp. Pet. 51, ECF No. 1-2.
[4] *See* Order, Feb. 3, 2026, ECF No. 3.
[5] *See* Order, Feb. 17, 2026, ECF No. 11.

from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).

### B. Temporary Restraining Order

Rule 65 of the Federal Rules of Civil Procedure governs injunctions and restraining orders. A temporary restraining order is "simply a highly accelerated and temporary form of preliminary injunctive relief, which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction." *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (citation modified). A court may issue a Temporary Restraining Order if the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in its favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). As the movant, it is the party seeking relief who bears the burden of proving all four elements of the requested injunctive relief. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). Temporary restraining orders are "extraordinary relief and rarely issued." *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999). The decision to grant or deny injunctive relief is committed to a district court's discretion. *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).

### III.   ANALYSIS

### A. Petitioner's Claim Under 8 C.F.R. § 241.4(l)

Petitioner argues that he was not provided with proper notice of his parole revocation as required under 8 C.F.R. § 241.4(l) and is therefore being improperly held.[6] The Government contends that Petitioner's detention is lawful because (1) § 241.4(l) does not apply to Petitioner

---

[6] Br. Supp. Pet. 6, ECF No. 1-1.

and (2) because Petitioner's parole expired on September 25, 2024 he is subject to mandatory detention as he has no lawful status to remain in the United States.[7] The Government is correct.

8 C.F.R. § 241.4 applies to "an alien in custody beyond the removal period." So, the question becomes, is Petitioner in the removal period. 8 C.F.R. § 241.4(g)(1)(i)(B) provides that

> The removal period for an alien subject to a final order of removal shall begin on the latest of the following dates: . . . (B) If the removal order is subject to judicial review (including review by habeas corpus) and if the court has ordered a stay of the alien's removal, the date on which, consistent with the court's order, the removal order can be executed and the alien removed.

See also 8 U.S.C. § 1231(a)(1)(B)(ii) ("the removal period begins on the latest of the following: . . [i]f the removal order is judicially reviewed and if a court orders a stay of removal of the alien, the date of the court's final order."). It is undisputed that Petitioner's removal has been stayed by the Fifth Circuit, and based on the record before the Court, it has not yet issued an order regarding Petitioner's removal. Thus, Petitioner is not within the removal period, and 8 C.F.R. § 241.4(l) is inapplicable.

But even if Petitioner was within the removal period, after his parole expired on September 25, 2024, he had no lawful status to remain in the United States and was subject to mandatory detention. See 8 U.S.C. § 1225(b)(2)(A). Petitioner does not and cannot claim he was lawfully "admitted" to the United States. See 8 U.S.C. § 1101(13). Having not been admitted, Petitioner is an "applicant for admission" who "is not clearly and beyond a doubt entitled to be admitted," and therefore "shall be detained" without bond. See 8 U.S.C. § 1225(b)(2)(A); see also Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) (holding that an applicant for admission is necessarily someone who is seeking admission and therefore subject to detention without bond under 8 U.S.C. § 1225(b)(2)(A)).

---

[7] Resp. 3–5, ECF No. 12.

### B. Petitioner's Due Process Claim

Petitioner asserts a procedural due process violation because "his abrupt revocation of parole . . . deprived him of liberty."[8] He argues that the three-factor test laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) requires his release.[9] The Government contends that the *Mathews* factors are not the appropriate method for evaluating Petitioner's due process claim and that "automatic termination of discretionary parole does not constitute a due process violation."[10] The Court is likewise skeptical of *Mathews* applicability here and does not find a due process violation.

The Supreme Court has explained that "we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews.*" *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (citing *Demore v. Kim*, 538 U.S. 510, 523, 526–29 (2003); *Dusenbery v. United States*, 534 U.S. 161, 168 (2002)).[11]

This does not mean Petitioner is without recourse. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S.

---

[8] Br. Supp. Pet. 9, ECF No. 1-1.

[9] *Id.* at 9–13.

[10] Resp. 5, ECF No. 12.

[11] The three *Mathews* factors are (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Even applying the *Mathews* factors Petitioner's habeas claim would not succeed. While Petitioner no doubt has a personal liberty interest, this interest is substantially diminished given that he is in the United States illegally. His personal liberty interest is also overshadowed by the Government's interest in "control over matters of immigration [which] is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Likewise, the risk of erroneous deprivation of rights is negligible. *See Rodriguez Diaz*, 53 F.4th at 1208 (finding that the *Matthews* factors weighed against release from detention because of sufficient procedural safeguards and the government's strong interest in immigration enforcement).

at 523. "Procedural due process rules are meant to protect against the mistaken or unjustified deprivation of life, liberty, or property." *A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025) (citation modified). At the same time, the Supreme Court has long "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. "[T]he only procedural rights of an alien seeking to enter the country are those conferred by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 131 (2020).

Based on the record before the Court, Petitioner has received and is receiving adequate due process. He sought asylum and appeared before an immigration judge who denied his asylum claim and ordered him removed. He then appealed that determination to the BIA, which dismissed his appeal. And most recently, he appealed the BIA's decision to the Fifth Circuit and obtained a stay of removal while the Circuit examines his appeal. This is the due process Congress created. *See* 8 U.S.C. § 1252. Congress also set the procedural rights of an "alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). As the Court explained above, Petitioner is an unadmitted alien subject to § 1225's mandatory detention without bond. *See* 8 U.S.C. § 1225(b)(2)(A); *see also Buenrostro-Mendez*, 166 F.4th at 503. As such, Petitioner has "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. Accordingly, Petitioner's mandatory detention without bond does not violate due process.

### C. Petitioner's *Zadvydas* Claim

Petitioner argues that because the Fifth Circuit has stayed his removal, it is unlikely that he will be removed in the reasonably foreseeable future.[12] Therefore, his detention violates the

---

[12] Br. Supp. Pet. 15–16, ECF No. 1-1.

Supreme Court's holding in *Zadvydas v. Davis*, 533 U.S. 678 (2001), requiring his release.[13] But as the Government correctly points out, *Zadvydas* does not apply here.[14] *Zadvydas* is only implicated when an alien has been held in detention past the 90-day removal period provided in 8 U.S.C. § 1231(a)(1)(A). *See id.* And as the Court explained above, Petitioner is not in a removal period.

If an alien is not removed within the 90-day removal period provided by § 1231(a)(1)(A), he may be detained beyond that time under 8 U.S.C. § 1231(a)(6). In *Zadvydas*, the Supreme Court held that indefinite detention pursuant to 8 U.S.C. § 1231(a)(6) would "raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690. The Supreme Court therefore interpreted § 1231(a)(6) to permit detention beyond the 90-day removal period for only such time as is "reasonably necessary to secure the alien's removal." *Id.* It concluded that six-months beyond the removal period was presumptively reasonable, but after six months, if "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

But here, because Petitioner has appealed, and the Fifth Circuit has stayed, his removal, Petitioner is not in a removal period.[15] Thus, *Zadvydas* is not implicated. But even if *Zadvydas* applied, it "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The key question is whether the removal of the alien in question is "no longer practically attainable." *Id.* at 690. "While the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,' the

---

[13] *Id.*
[14] Resp. 8, ECF No. 12.
[15] *See supra* III. A.

detention here is of a much shorter duration" as Petitioner will receive direction from the Fifth Circuit in due course on whether he should be removed. *Demore*, 538 U.S. at 528 (quoting *Zadvydas*, 533 U.S. at 690–91). As such, there is no indication that Petitioner's removal is no longer practically attainable.

**D. Petitioner's Temporary Restraining Order and Preliminary Injunction**

For Petitioner to obtain injunctive relief he must show a substantial likelihood of success on the merits of his habeas claims. *Daniels Health Servs.*, 710 F.3d at 582. Because Petitioner has not demonstrated a substantial likelihood of success on the merits of those claims, the Court **DENIES** Petitioner's Motion for Temporary Restraining Order.

**IV.    CONCLUSION**

For the reasons stated above, Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED** and Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 10) is **DENIED**.

**SO ORDERED** on this **16th day** of **March, 2026.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**